**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RYAN S. POPE,

       Petitioner,

v.                                                    Case No: 8:11-cv-2326-T-36TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

**<u>ORDER</u>**

Petitioner, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges his conviction for robbery with a weapon, entered in 2004 in the Tenth Judicial Circuit, Polk County, Florida. Respondent has filed a response (Dkt. 4), and Petitioner filed a reply (Dkt. 7). Upon review, the petition must be denied.

**Procedural History**

The State of Florida charged Petitioner with one count of robbery with a deadly weapon. (Dkt. 6, Ex. A1.) A jury convicted him of the lesser-included offense of robbery with a weapon. (Dkt. 6, Ex. A2.) Petitioner was sentenced to thirty years' imprisonment as a prison releasee reoffender. (Dkt. 6, Ex. A3.) The state appellate court *per curiam* affirmed Petitioner's judgment and sentence on direct appeal. (Dkt. 6, Ex. B3.)

Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 6, Ex. C1.) After summarily denying numerous claims and conducting an evidentiary

hearing on several other claims, the state court entered a final order denying Petitioner's Rule 3.850

motion.  (Dkt. 6, Ex. C2, Dkt. 1, pp. 46-52.)  The state appellate court *per curiam* affirmed the order

of denial on May 13, 2011.  (Dkt. 1, p. 53.)  Respondent acknowledges that this petition is timely

under 28 U.S.C. § 2244(d).

**Standard of Review for Petitions Subject to AEDPA**

This petition is subject to the provisions of the Antiterrorism and Effective Death Penalty

Act ("AEDPA"), effective April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or

laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d) sets forth a highly

deferential standard for federal court review of a state court's findings of law and fact.  It provides

that habeas relief may not be granted on a claim adjudicated on the merits in state court unless such

determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court on a question of
> law or if the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Additionally, "the focus ... is on whether the state

court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *See Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 130 S.Ct. 1855, 1866 (2010).

A state court's factual findings must also be given deference, and a petitioner bears the burden of overcoming a state court's factual determination by clear and convincing evidence. Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

**Exhaustion of State Remedies and Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his

claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).   A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the

federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

**Standard of Review for Claims of Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, a petitioner must show that counsel's performance was deficient and that this deficiency prejudiced the petitioner. *Id*. at 687. In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel is presumed to have provided effective assistance. *See id.* at 689-90. Further, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Sustaining a claim of ineffective assistance of counsel is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted). If a court can dispose of a claim of ineffective assistance of counsel on one prong of the *Strickland* test, the court need not consider the other prong. *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

**Discussion**

*I. Factual Background*[1]

This case involved a robbery at Love's Travel Stop in Polk City, Florida, on January 31,

---

[1]The information in this section is derived from the trial transcript. (Dkt. 6, Ex. A4.)

2004.  Donna Smead was working as a cashier at the gas desk.  (Dkt. 6, Ex. A4, p. 131.)  At approximately 2:30 p.m., a man at the desk told her that he wanted money.  (Id., pp. 131-32.)  The man did not say that he had a weapon, and Smead did not see a weapon.  (Id., p. 141.)  However, Smead observed that the man had his hand in his pocket.  (Id., pp. 132, 139, 141.)  Smead saw that it was "pointed."  (Id., pp. 139, 141.)  She "assumed it was the gun."  (Id, p. 133.)  The man said to Smead, "I don't want to do it, but I will."  (Id.)  Smead took this to mean that he would shoot her if she did not follow his instructions.  (Id.)  The man had a t-shirt tied around his face, but Smead could see his eyes.  (Id, pp. 132, 134.)  After she gave him cash from her drawer, he left the building and headed south towards an area with orange groves.  (Id., pp. 134, 135-36.)  Smead made an in-court identification of Petitioner at trial.  (Id., p. 135.)

After the robbery, Jason Kalbs, another employee of Love's Travel Stop, ran out of the building.  (Id., p. 148.)  He was facing south when he saw someone in a nearby wooded area.  (Id., pp. 148-49.)  The person Kalbs saw told him that he had a gun and he would open fire or would shoot.  (Id., pp. 149, 150, 154.)  Employee Stephen Wilson also ran out of the building after the robbery and chased a man whom he saw running through the parking lot.  (Id., pp. 157-58.)  The man ran into a swampy area and told Wilson not to come any closer, or he would shoot Wilson.  (Id., pp. 158, 165.)  Wilson did not see any weapon.  (Id., p. 165.)  At trial, Wilson identified Petitioner as the man he saw.  (Id., pp. 158-59.)

Law enforcement, including a canine unit, responded and pursued the suspect.  As Polk County Deputy Sheriff Stephen Hearth's dog tracked into a wooded area, Deputy Hearth observed several pieces of clothing "along the way"; the first item he saw was a pair of shoes.  (Id., p. 174.)  Deputy Tonya Wright of the Polk County Sheriff's Office also participated in the pursuit of the

suspect.  As she followed the path tracked by Deputy Hearth's dog, Deputy Wright saw a shirt, tennis shoes, jeans, a sweatshirt, and a "jersey style" shirt. (Id., pp. 183-84, 186-89.) These items were recovered and were entered into evidence at trial.

Deputy Hearth's dog continued to track the suspect, and as they approached a clump of trees, Deputy Hearth heard a voice saying, "I give up." (Id., p. 176.)  Deputy Wright also heard a person near a clump of trees saying that he was giving up.  (Id., p. 190.)  Deputy Wright saw that the suspect was only wearing a pair of shorts.  (Id., p. 191.)  Similarly, when the suspect was handcuffed, Deputy Hearth observed him on the ground wearing only what Deputy Hearth believed to be his underwear. (Id., p. 177.)  At trial, Deputy Hearth identified the suspect as Petitioner. (Id.)  According to Deputy Wright, no weapons were found along the dog's track.  (Id., p. 191.)

Deputy Roy Knecht of the Polk County Sheriff's Office also responded to the robbery.  (Id., pp. 193-94.)  One of his duties was to transport the suspect after he was apprehended.  (Id., p. 194.)  He and the other officers had been made aware that the perpetrator was believed to have had a weapon or gun during the robbery.  (Id., p. 195.)  When Petitioner was being placed in the back of a police vehicle following his arrest, Deputy Knecht said to the other officers present, "We need to find a gun." (Id.)  Deputy Knecht testified that, after he made this comment, Petitioner said, "There never was a gun; I only had a knife."  (Id.)

*II. Petitioner's Claims*[2]

Ground One: "MR. POPE WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO A DENIAL OF A MOTION FOR JUDGMENT OF ACQUITTAL IN ORDER TO PRESERVE THE ISSUE FOR APPEAL."

---

[2]Several of Petitioner's claims are considered together or considered out of numerical order for purposes of clarity.

Petitioner argues that counsel was ineffective for failing to object when the trial court denied his motion for judgment of acquittal.  He contends that, because of this failure, his claim was not preserved for appellate review.  In support of his ineffective assistance of counsel claim, Petitioner appears to argue that he would have had a meritorious issue for appeal because, as no witness testified to seeing a weapon and no weapon was found, the evidence presented at trial did not demonstrate that he carried a weapon during the commission of the offense.[3]

Petitioner raised this argument in claim one of his Rule 3.850 motion, which the state court summarily denied.  In denying this claim, the state court found:

> The record establishes that trial counsel moved for a Judgment of Acquittal when the State rested its case.  Trial counsel's motion was very specific and detailed.  The trial judge denied the motion.  Since trial counsel's motion specifically outlined the grounds on which it was based, there was no need for trial counsel to enter a specific objection to the trial court's ruling in order to preserve the issue for appeal.  Additionally, there was no need for trial counsel to renew his motion at the close of all the evidence. [(*See Morris v. State*, 721 So. 2d 725 (Fla. 1998)] The Defendant's claim has no legal merit.

(Dkt. 6, Ex. C2, p. 38) (court's citation to exhibit omitted).

The  record reflects that after the State rested its case, defense counsel moved for a judgment of acquittal.  As noted in the state court's order, counsel presented detailed argument in support of

---

[3]To the extent Petitioner may attempt to raise a separate claim in his federal habeas petition that the evidence presented at trial was insufficient to support his conviction, it cannot provide relief.  This claim was not raised on direct appeal.  A claim challenging the sufficiency of the evidence is properly brought on direct appeal. *See Childers v. State*, 782 So.2d 946 (Fla. 4th DCA 2001).  The record reflects that counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that no meritorious claims for appeal existed.  The brief did not identify sufficiency of the evidence as a potential claim.  (Dkt. 6, Ex. B1.)  A review of the Second District Court of Appeal's docket in case number 2D04-5400 indicates that Petitioner did not file a *pro se* brief.  *See id.* at 744 (stating that, after appellate counsel files a motion to withdraw and brief pursuant to the procedures set forth in *Anders*, "[a] copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses ....").  Accordingly, the issue was not briefed and argued before the state appellate court.  The claim is therefore unexhausted.  State procedural rules do not provide for successive direct appeals.  *See* Fla. R. App. P. 9.140.  Because Petitioner cannot return to state court to file another direct appeal, the claim is procedurally defaulted.  Petitioner does not argue or demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception would apply to excuse the default.  *See Smith*, 256 F.3d at 1138.  Accordingly, this claim does not warrant relief.

his motion.  He specifically argued that the evidence presented was insufficient to prove that Petitioner carried a weapon or a deadly weapon during the robbery.  (Dkt. 6, Ex. A4, pp. 203-06.) And as to the suggestion that Petitioner may have had a knife, counsel argued that the State presented insufficient evidence to show that Petitioner had a knife at the time of the robbery, or that any knife would meet the statutory definition of a weapon.  (Id., pp. 205-06.)  Counsel also pointed out that no weapon was found.  (Id., p. 205.)

The postconviction court determined that, after the trial court denied the motion, counsel was not required to object in order to preserve the matter for appellate review.  Specifically, the postconviction court's order cited *Morris v. State*, 721 So.2d 725 (Fla. 1998).  That opinion held that, when a defendant moves for a judgment of acquittal at the conclusion of the State's case, the issues raised in the motion are considered preserved for appellate review.  *Id.* at 727.  Thus, the state postconviction court found that counsel was not ineffective because, by arguing in his motion for judgment of acquittal that the State failed to prove Petitioner carried a weapon during the offense, counsel preserved the matter for appellate review.  Accordingly, Petitioner has not shown how counsel can be deemed ineffective for the reasons asserted in Ground One.[4]  As Petitioner has not

---

[4]In his reply, Petitioner concedes that the state court properly denied his ineffective assistance of counsel claim but alleges that the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient.  Specifically, he contends that "[t]he constitutional violation in this ground comes from the trial judge's error when he ignored the overwhelming evidence that no weapon was presented at the critical time of the robbery, at the time of the taking of cash from the cashier, Ms. Smeed [sic]."  (Dkt. 7, p. 10.)  In his reply, Petitioner also asserts that postconviction counsel was ineffective: "Trial counsel and counsel during the § 3.850 hearing failed to render effective assistance of counsel ...."  (Id., p. 9.)

To the extent Petitioner is attempting to use his reply to raise new claims, he is not entitled to a review of such claims on the merits, as they are time-barred.  A prisoner must file his petition under § 2254 within one year of the date his judgment becomes final, although this period is tolled for the time that any properly filed petition for state collateral relief is pending.  28 U.S.C. § 2244(d)(1)-(2).  Because a federal petition does not toll the one-year time limitation, *Duncan v. Walker*, 533 U.S. 167 (2001), an additional claim might be untimely even though the original petition is untimely.  If the one-year period to file a habeas petition has expired before an amended petition is filed, any additional claim is untimely unless it "relates back" to the original petition.  *See* Fed. R. Civ. P. 15(c)(1)(B); *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).  Because Petitioner's potential new claims do not relate back to the claims raised in his habeas petition, they must be timely.

demonstrated that the state court's ruling is contrary to or an unreasonable application of clearly established federal law, Ground One warrants no relief.

Ground Two: "MR. POPE WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO REQUEST A SPECIAL JURY INSTRUCTION DEFINING 'WEAPON' AS DEFINED IN SECTION § 790.001 FLA. STAT. (2004)."

Petitioner argues that counsel was ineffective for not requesting a special jury instruction on the definition of a weapon as set forth in § 790.001, Fla. Stat. (2004). The jury was instructed on the charged offense of robbery with a deadly weapon, as well as the lesser-included offense of robbery with a weapon. (Dkt. 6, Ex. A4, pp. 253-56.) They convicted Petitioner of the latter. The relevant portion of the instructions given to the jury provided the definitions of deadly weapon and

---

The record reflects that 358 days of un-tolled time passed between the date Petitioner's convictions became final and the date he filed his federal habeas petition. Petitioner's judgment and sentence were affirmed on direct appeal on December 9, 2005. (Dkt. 6, Ex. B3.) His judgment and sentence became final 90 days later, on March 9, 2006. *See Bond v. Moore,* 309 F.3d 770 (11th Cir. 2002); Sup. Ct. R. 13.3. The one-year clock started the next day, March 10, 2006, and 232 days of un-tolled time passed before Petitioner filed his postconviction motion in accordance with the mailbox rule on October 27, 2006. (Dkt. 6, Ex. C1, p. 35.) Upon collateral appeal, the state appellate court's mandate issued on June 9, 2011. (Dkt. 1, p. 54.) The clock began running again the next day, June 10, 2011, and an additional 126 days of un-tolled time passed before Petitioner filed his federal habeas petition on October 13, 2011, for a total of 358 days of un-tolled time. Petitioner had seven more days of his one-year time limitation, meaning that his federal filing limitation was October 20, 2011. However, his reply was filed when he gave it to prison officials for mailing on December 20, 2011. Consequently, any new claim raised in the reply is untimely.

Additionally, even if Petitioner's potential new claim of trial court error was timely, it would be unexhausted because it was not raised on direct appeal. As noted, counsel filed an *Anders* brief, and petitioner did not file a pro se initial brief. *See supra,* note three. As Petitioner cannot pursue a successive appeal in state court, this ground would be procedurally defaulted. Petitioner does not demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception would apply to allow review of the claim. *See Smith,* 256 F.3d at 1138. Consequently, this argument cannot provide relief. Further, even assuming Petitioner's potential new claim of ineffective assistance of postconviction counsel was timely, Petitioner would not be entitled to relief. Because he presents no facts or argument in support of this general assertion, the claim is too vague and conclusory to warrant relief. *See Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Moreover, Petitioner raised this general claim of ineffective assistance of postconviction counsel on appeal of the order denying his Rule 3.850 motion. The state appellate court *per curiam* affirmed the order of denial. Therefore, the state appellate court considered and rejected Petitioner's claim of ineffective assistance of postconviction counsel as presented in his appeal. The state appellate court's *per curiam* affirmance warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003).

weapon as set forth in Standard Jury Instruction 15.1, regarding robbery:

> If you find that the Defendant carried a weapon in the course of committing the robbery and that the weapon was a deadly weapon, you should find him guilty of robbery with a deadly weapon.  If you find that the Defendant carried a weapon that was not a firearm or any other deadly weapon in the course of committing the robbery, you should find him guilty of robbery with a weapon ... A weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm.  A weapon is legally defined to mean any object that could be used to cause death or inflict serious bodily harm.

(Dkt. 6, Ex. A4, p. 255.)[5]  *See* Fla. Std. Jury Inst. (Crim.) 15.1.

Petitioner asserts that counsel should have requested that the court provide a special instruction to the jury defining a weapon as set forth in § 790.001(13) because that subsection "arguably" provides for a different definition of a weapon.  (Dkt. 1, pp. 13-14.)  Chapter 790, Fla. Stat., concerns weapons and firearms.  The version of § 790.001(13) in effect at the time of the November 17, 2004 trial provided:

> As used in this chapter
> ...
> (13) "Weapon" means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.

§ 790.001(13), Fla. Stat. (2004).[6]  Petitioner appears to contend that by rejecting the charge of robbery with a deadly weapon, the jury must have believed that he did not have a firearm and therefore concluded that, based on Deputy Knecht's testimony, he had a knife.  He argues that counsel should have asked for an instruction based on § 790.001(13) because the jury could have decided that the knife they thought he had was excluded from the definition of "weapon" in that

---

[5]The jury was provided the same instruction again after they requested another reading of the instructions during deliberations.  (Dkt. 6, Ex. A4, pp. 272.)

[6]This is identical to the content of § 790.001(13), Fla. Stat. (2003), in effect at the time of the offense.

subsection.[7]  He argues that it is possible the jury would have thought that he had a pocketknife or knife other than a dirk (which he asserts is a type of dagger) that would have been excluded from the definition of weapon under § 790.001(13).  Petitioner presented this argument in claim two of his Rule 3.850 motion.  The state court summarily denied this claim:

> The instruction regarding the definition of "weapon" given by the trial court in the instant case is that found in *Florida Standard Jury Instructions in Criminal Cases*. The Court finds that, while the definition of a weapon as found in Section 790.001 is useful in determining whether someone might be guilty of a charge of Carrying a Concealed Weapon, the Section 790.001 definition is not necessarily determinative of whether a violation of Section 812.13(2)(b) has occurred. [*See Gust v. State of Florida*, 558 So. 2d 450 (Fla. 1st DCA 1990) and *State v. Nixon*, 295 So. 2d 121 (Fla. 3rd DCA 1974)] *Florida Standard Jury Instructions in Criminal Cases* defines "weapon" as "*any* object that could be used to cause death or inflict serious bodily harm."   (emphasis added)   In the instant case, trial counsel cannot be found ineffective for having not requested a special instruction based on Section 790.001 when the *Florida Standard Jury Instructions in Criminal Cases* definition of "weapon" was given by the trial court.  "Trial counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding."  *Teffteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla. 1999).

(Dkt. 6, Ex. C2, pp. 38-39) (court's references to exhibits omitted).[8]

Petitioner has not shown that he is entitled to relief.  As the postconviction court noted, the

---

[7]To the extent Petitioner may be attempting to raise a separate claim in his habeas petition that the State presented insufficient evidence that he possessed a weapon during the robbery, this claim cannot be considered because it is unexhausted.  *See supra*, note three.

[8]The court's order found that the definition of weapon provided in § 790.001 is not necessarily determinative of whether a violation of § 812.13(2)(b), Fla. Stat., has occurred.  Petitioner was charged with robbery with a deadly weapon in violation of § 812.13.  (Dkt. 6, Ex. A1.)  Section 812.13(2)(b) provides that if in the course of committing a robbery the offender carried a weapon, the offense is classified as a first degree felony. Additionally, the court characterized Petitioner's claim as involving the argument that "the definition as found in Section 790.001, Fla. Stat. (2005) excludes a common pocket knife, plastic knife, or blunt-bladed table knife from the definition of 'weapon.'" (Dkt. 6, Ex. C2, p. 38.)  Because the state court referred to plastic knives and blunt-bladed table knives as specifically being exempted from the definition of weapon, it appears that the state court was referring to a later version of § 790.001.  As noted, the versions of § 790.001(13) applicable at the time of the offense and trial specifically excluded a common pocketknife from the definition of a weapon.  This is consistent with the definition Petitioner recited in his postconviction motion.  (Dkt. 6, Ex. C1, p. 18.)  Section 790.001(13) was amended effective July 1, 2006, to exclude plastic knives and blunt-bladed table knives from the definition of weapon.  *See* § 790.001(13), Fla. Stat. (2006); Ch. 2006-186, § 1, at 1913, Laws of Fla.

trial court provided a definition of weapon consistent with that found in the standard jury instruction on robbery. The state court also cited *Gust v. State*, 558 So.2d 450 (Fla. 1st DCA 1990) in its order. That opinion provides that the validity of an armed robbery charge under § 812.13, Fla. Stat., "does not necessarily turn on whether the weapon used meets the definitional criteria of section 790.001(13)." *Id.* at 452. The court in *Gust* determined that, while it may be possible to look to either the standard jury instruction or § 790.001 for a definition of weapon, the fact that a particular type of knife may be excluded from the definition in § 790.001(13) does not preclude a finding of armed robbery, "i.e., robbery with a weapon." *Id.* at 452-53.[9]

Petitioner fails to show that counsel provided deficient performance. Given the authority described by the state court, counsel did not have a basis to seek a special jury instruction.[10] The jury is presumed to follow the instructions provided by the court. *See Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) ("Jurors are presumed to follow the law as they are instructed."). There was testimony at trial that Petitioner indicated on multiple occasions that he had a weapon. Petitioner does not demonstrate that the standard jury instruction that was provided was a

---

[9] The state court also cited *State v. Nixon*, 295 So.2d 121 (Fla. 3d DCA 1974). That opinion concluded that a pocketknife can constitute a deadly weapon, even though it is specifically exempted from the definition of weapon in § 790.001(13), if it is used in a way likely to produce death or great bodily injury. *Id.* at 122. This determination is consistent with the definition of weapon and deadly weapon provided in the standard jury instructions, which also focus on the manner in which the object is used.

[10] Additionally, while not expressly addressed in the state court's order, it is not apparent that the trial court would have been required to provide a special jury instruction upon counsel's request. "In order to be entitled to a special jury instruction, [a defendant] must prove: (1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing." *Stephens v. State*, 787 So.2d 747, 756 (Fla. 2001) (footnotes omitted). Counsel's position during both opening statements and closing arguments was that, at most, Petitioner committed petty theft because no weapon was found or proven to exist and the taking was not forceful. (Dkt. 6., Ex. A4, pp. 126, 230-36.) The standard jury instruction that was given did not hinder Petitioner's ability to argue that he was not guilty of robbery with a weapon or deadly weapon on these same grounds. Therefore, it appears that the standard jury instruction adequately covered his theory of defense.

misstatement of the law, or that the jury misunderstood the contents of the instruction or its purpose.

Moreover, the assertion implicit in this claim, that the jury might not have found Petitioner guilty of robbery with a weapon if a special instruction had been given because they could have determined that any knife he may have had was excluded from the statutory definition of a weapon, is speculative and conclusory.  Petitioner raises this argument in vague and speculative terms of what information he believes the jury relied upon and what they concluded, as well as what they possibly could have decided.  By presenting his claim in this speculative manner, Petitioner fails to show the prejudice that *Strickland* requires to succeed on a claim of ineffective assistance of counsel.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Accordingly, Petitioner fails to show that the state court's ruling was contrary to or an unreasonable application of clearly established federal law.  Consequently, he is not entitled to relief on Ground Two.

Ground Four: "MR. POPE WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO ADVISE THE DEFENDANT OF AN APPARENT PLEA OFFER OF 15 YEARS ON THE DAY OF TRIAL," and Ground Seven(B): "MR. POPE WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO INFORM THE TRIAL JUDGE THAT THE DEFENDANT WANTED TO ACCEPT THE STATE'S PLEA OFFER."

In Ground Four, Petitioner asserts that counsel was ineffective for failing to inform him that a fifteen-year plea offer was available on the day of trial.  The parties had previously engaged in plea discussions but did not reach an agreement.  Petitioner claims that, on the day of trial, the prosecutor briefly began discussing plea offers, but that the trial judge indicated he did not want to hear any plea offers, thereby "effectively end[ing] all conversation of any plea agreements or offers."  (Dkt.

1, p. 23.)[11]

Other proceedings on the day of trial relevant to these claims concerned the defense's motion to suppress Petitioner's statement to Deputy Knecht. The court conducted a hearing on the motion prior to the start of trial, where it considered the testimony of Deputy Knecht, as well as argument from the parties concerning suppression. In support of the motion, counsel argued that Petitioner was tricked into making the statement to Deputy Knecht because his comment to the other officers that they needed to find a gun was meant to elicit a response from Petitioner, and that Petitioner's statement was made while he was in custody but prior to receiving *Miranda*[12] rights. (Dkt. 6, Ex. A4, pp. 100-104.) At the conclusion of the hearing, the court denied the motion to suppress. It found that Petitioner's comments were spontaneous statements and not the result of custodial interrogation, and that the Deputy's remark was not reasonably likely to elicit an incriminating

---

[11] The record reflects that, prior to beginning jury selection, the court and the parties discussed administrative matters. (Dkt. 10, pp. 5-13.) After addressing the procedure to be used for jury selection, the court inquired of the parties whether any other issues required attention:

THE COURT:     ...Anything else before we get started?

[THE STATE]:   Yes, sir, I need several things on the record.

THE COURT:     Please.

[THE STATE]:   Your Honor, I would just ask that, your Honor, take a look into the Court file. And a P.R. was filed May the 7th, 2004. Also, your Honor, on the record, the offer to the Defendant was for - -

THE COURT:     Wait, wait, wait, wait. I don't want to hear offers to the Defendant. I have no idea what the offer is; and, if the Defendant is found guilty, I don't want to be responsible for knowing what the offer was. I am going to sentence the Defendant from anything from what is legally the minimum to what is legally the maximum. And that's the range that I'm going to consider. And I do not ever want to know what the offers were.

[THE STATE]:   Yes, your Honor. Thank you.

(Dkt. 10, p. 11.)

[12] *Miranda v. Arizona*, 384 U.S. 436 (1966).

statement from Petitioner.  (Id., p. 104.)  The court found that the statement was alternatively admissible under the public safety exception to *Miranda* requirements in accordance with *New York v. Quarles*, 467 U.S. 649 (1984).  (Id.)

Petitioner contends in Ground Four that counsel was ineffective for failing to inform him of the fifteen-year plea offer on the day of trial, and asserts that the case might have been resolved had counsel and the prosecutor discussed plea offers further.  Petitioner further argues in his reply that, at the time the state court denied his motion to suppress, he would have accepted the fifteen-year plea offer if he knew about it.  In a similar argument raised in Ground Seven(B), Petitioner claims that counsel was ineffective for failing to inform the court that Petitioner wanted to accept the State's plea offer.  In support of his claim, Petitioner reiterates that the trial court "cut off" dialogue regarding a potential plea offer prior to the start of trial, and that counsel failed to ask for a recess "to get a clear understanding of whether a plea offer was being made."  (Dkt. 1, p. 39.)  He asserts that the court "materially altered the course of the trial that day" and that "no one can now say what would have happened" had the parties discussed a potential plea further.  (Dkt. 1, p. 39.)  Petitioner reiterates that the trial judge "erred in refusing to allow the state attorney and [defense counsel] to discuss any pleas."  (Dkt. 1, p. 40.)[13]

Petitioner raised the ineffective assistance of counsel claim presented in Ground Four of his habeas petition as claim five of his Rule 3.850 motion and raised the ineffective assistance of

---

[13]To the extent Petitioner may now be raising a new claim alleging that the state trial court erred in terminating plea discussions, he is not entitled to relief.  First, as this claim is not raised as presenting a federal question, it is not cognizable in this habeas petition. *See Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988). Additionally, because the claim was not raised on direct appeal, it is unexhausted.  A claim of trial court error is properly brought on direct appeal. *See Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001).  As noted, Petitioner did not file a pro se brief after appellate counsel filed an *Anders* brief. Since state procedural rules do not provide for second direct appeals, the ground would be procedurally defaulted.  Petitioner has not demonstrated that either the cause and prejudice or fundamental miscarriage of justice exception would apply to overcome the default. *See Smith*, 256 F.3d at 1138. Petitioner cannot obtain relief on this claim.

counsel claim presented in Ground Seven(B) as claim twelve(b) of his Rule 3.850 motion.[14]  The

state court granted an evidentiary hearing on both of these claims.  At the evidentiary hearing,

counsel testified that the State's plea offer of fifteen years as a prison releasee reoffender "was the

same throughout the course of the representation."  (Dkt. 6, Ex. C4, p. 269.)  Counsel further

testified that he repeatedly encouraged Petitioner to accept this plea offer.  (Id.)  While Petitioner

was interested in a plea agreement, counsel testified, he did not want to accept the State's offer of

fifteen years as a prison releasee reoffender.  (Id., p. 270.)  Counsel testified that the plea offer was

available at the mandatory docketing the Friday prior to trial, and that he informed Petitioner of this.

(Id., pp. 270-71.)  He testified that the State rejected Petitioner's counter offer of fifteen years

without the prison releasee reoffender designation.  (Id., p. 271.)  Counsel indicated that Petitioner

did not inform him that he would want to plead if the motion to suppress his statement to Deputy

Knecht was denied, or that he was displeased that the motion to suppress was not filed earlier.  (Id.,

pp. 271-72.)  Counsel further testified that he and Petitioner discussed the defense that counsel

intended to pursue, and that Petitioner did not indicate he was uncomfortable with that defense.  (Id.,

pp. 272-73.)  Finally, counsel testified that the last time the plea offer was available was at

mandatory docketing, and that it was no longer available on the day of trial.  (Id., pp. 279-80.)

Petitioner testified at the evidentiary hearing that counsel first informed him of a fifteen-year

offer from the State after he had been in pre-trial custody for approximately six months.  (Id., p.

244.)  Petitioner hesitated to take the offer because he still wanted to address suppression issues.

(Id., pp. 244-45.)  He further testified that he was prejudiced by the delay in filing the motion to

suppress his statement to Deputy Knecht because knowing the outcome of the motion while the plea

---

[14]The state court divided ground twelve of Petitioner's Rule 3.850 motion into sub-claims (a) and (b).

offer was still available would have affected his decision of whether to accept the offer.  (Id., pp. 240-41.)  Petitioner testified that he had wanted the motion to suppress resolved earlier because, if he had known that the statement to Deputy Knecht was ruled admissible, he likely would have entered a plea rather than proceeding to trial.  (Id., pp. 241, 252-53.)   Petitioner testified to his understanding that the plea offer was no longer available at the time of trial and that it no longer existed, "Maybe a week or two before trial."  (Id., p. 245.)  The state court denied this claim:

> [T]he Court finds that it found trial counsel's testimony at the hearing more credible than that of the Defendant with regard to claim 5.
> ...
> [T]he Court finds that trial counsel did not fail to convey the Defendant's desire to accept the State's offer to the trial court the day of trial or at any other time. Additionally, the Court finds that, based on the testimony at the evidentiary hearing and the record, the Defendant had no desire to accept the State's offer and did not convey such a desire to trial counsel.  The Court finds that Defendant's acceptance of the State's offer was not contingent on or affected by the timing of trial counsel's filing of a motion to suppress regarding the Defendant's statements to Deputy Sheriff Roy Knecht.  The Court did not find the Defendant's testimony credible regarding claim 5.

(Dkt. 1, pp. 48-49.)  The state court denied the claim now presented as Ground Seven(B) "for the same reasons stated as to claim 5."  (Dkt. 1, p. 52.)  The state court specifically found that Petitioner's testimony at the evidentiary hearing was not credible, and that counsel's testimony was more credible than that of Petitioner.  Deference must be given to the state court's credibility determinations, which are presumed to be correct.  *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" that of the petitioner.); *Devier v. Zant,* 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are ... entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).").

The state court found that credible testimony showed Petitioner did not wish to accept the

State's offer.  Accordingly, counsel could not have been ineffective for failing to inform the State that Petitioner wanted to agree to the offer.  Moreover, the state court found to be credible testimony indicating that Petitioner and the State discussed a potential plea but could not come to an agreement, and that Petitioner's decision of whether to accept a plea did not hinge on the outcome of the motion to suppress his statement to Deputy Knecht.  Petitioner's claims that counsel provided deficient representation for the reasons asserted in Grounds Four and Seven(B) must fail.

Additionally, Petitioner is unable to show prejudice because his argument that a plea would have been negotiated and accepted by both sides is speculative.  He asserts only that "[a] resolution of the case might have been possible" upon further plea discussions.  (Dkt. 1, p. 23.)  But Petitioner has not provided any evidence to show that the outcome of the proceedings would have been different and that the case would have in fact been resolved through a plea agreement rather than at trial.  To the contrary, counsel's evidentiary hearing testimony indicates that the parties were unable to reach an agreement about a potential plea offer.  Accordingly, Petitioner has not demonstrated that counsel was ineffective for the reasons asserted in Grounds Four and Seven(B).  He has not shown that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented.  Consequently, he is not entitled to relief on Ground Four or Ground Seven(B).

Ground Three: "MR. POPE WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO ARGUE THE CONTEXT OF DEFENDANT'S ALLEGED STATEMENT TO OFFICER KNECHT."

This claim concerns counsel's motion to suppress Petitioner's statements to Deputy Knecht. Deputy Knecht testified at trial that when he remarked to the other officers that they needed to find

a gun, Petitioner stated that there never was a gun and he only had a knife.  First, Petitioner argues

that counsel was ineffective because he "did not attempt to put [Petitioner's] statement in context

or even emphasize that [Petitioner] may have been misquoted."  (Dkt. 1, p. 18.)[15]

Petitioner raised this argument in claim three of his Rule 3.850 motion.  In summarily

denying this ground, the state court found:

> [T]he Defendant asserts that his trial counsel was ineffective in failing to argue the
> "context" of the Defendant's statement of Officer Ray Knecht as opposed to arguing
> that the statement was coerced during a motion to suppress the Defendant's
> statement to Officer Knecht.  What the Defendant appears to be asserting is that he
> was misquoted by Officer Knecht and that this should have been the grounds for his
> trial counsel's motion to suppress as opposed to coercion as advanced by trial
> counsel ... Trial counsel moved to suppress statements made by the Defendant to
> Officer Knecht based upon grounds recognized as having potential legal merit, that
> they were made without rights advisement.  Trial counsel had no legal basis to move
> to suppress the Defendant's statements on the basis that the Defendant was being
> misquoted by Officer Knecht.  Trial counsel cannot be deemed ineffective for failing
> to raise a meritless claim.

(Dkt. 6, Ex. C2, p. 39.)  The state court found that counsel would have had no basis to argue the

motion to suppress on the grounds suggested by Petitioner, and that the arguments that were made

by counsel were legally sound.  Counsel cannot be deemed ineffective when he presented viable

argument in support of the motion instead of meritless argument.  *See Brownlee v. Haley,* 306 F.3d

1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues that clearly lacked

merit).  As previously noted, counsel did present cogent arguments in support of the motion to

suppress.[16]  Counsel asserted that the statement should be excluded because it was improperly

---

[15]The argument that Deputy Knecht might have misquoted Petitioner appears to concern Petitioner's argument that he actually stated he did not have a gun as that would be his life.  This matter is discussed in more detail in Ground Six.

[16]In his habeas petition, Petitioner agrees that being misquoted would not be grounds to suppress the statement.  (Dkt. 1, p. 18.)

elicited by Deputy Knecht prior to Petitioner being provided his rights under *Miranda*. Petitioner does not demonstrate that the state court's conclusion is contrary to or an unreasonable application of clearly established federal law.

Petitioner appears to raise two additional aspects of his ineffective assistance of counsel claim. First, he asserts that when the state court denied relief on this ground, it only considered whether a misunderstanding or misquotation of his words constituted grounds for a motion to suppress. But he argues that this fails "to address the larger issue of what the jury thought it knew about the statement or whether the statement was properly obtained by police or admissible at trial." (Dkt. 1, pp. 18-19.) Petitioner is not entitled to relief on his argument that the state court erred in denying his claim on this basis. Petitioner failed to assert in his Rule 3.850 motion that counsel was ineffective in regard to what the jury believed it knew about the statement or whether the statement was properly obtained and used at trial.[17] Therefore, this argument was not properly presented to the state court and is unexhausted. Petitioner cannot now return to state court to file a successive postconviction motion. *See* Fla. R. Crim. P. 3.850(h). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. As Petitioner does not demonstrate that the cause and prejudice or fundamental miscarriage of justice exception would apply to allow consideration of the claim, the claim is procedurally barred. Accordingly, this argument provides no relief for

---

[17]Although Petitioner raised this claim on appeal of the order denying his postconviction motion, the State pointed out that Petitioner's claim concerning what the jury thought it knew was not properly brought on appeal because it had not been presented in the postconviction motion. (Dkt. 6, Ex. D2, p. 12.) The record reflects that Petitioner did not assert this claim in his Rule 3.850 motion. (Dkt. 6, Ex. C1.) The state appellate court *per curiam* affirmed the order of denial. (Dkt. 1, p. 53.) This ruling is presumed to rest on the state procedural bar asserted in the answer brief. *See Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir.) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."), *cert. denied*, 490 U.S. 1071 (1989).

Petitioner.[18]

Second, Petitioner asserts that counsel was ineffective for failing to file the motion to suppress until the day of trial. Therefore, he contends, the "real issue" is whether counsel's delay in filing the motion amounted to ineffective assistance. (Dkt. 1, p. 19.) In particular, he states that during the time counsel delayed in filing the motion, the State withdrew a fifteen-year plea offer. Petitioner asserts that if the motion was filed and ruled upon at an earlier time, he "would have had additional critical information in assisting him in deciding whether to accept a plea offer of 15 years." (Dkt. 1, p. 20.)[19] In support of his contention that he wanted the motion filed earlier, Petitioner asserts that he submitted a motion to discharge his attorney for failing to file the motion. The record reflects that counsel addressed the motion to suppress statements to Deputy Knecht the morning of trial; counsel told the court that the motion was not included in the court file but had been completed the previous day. (Dkt. 6, Ex. A4, p. 90.)[20] The court heard the motion prior to the start of trial.

---

[18]Furthermore, notwithstanding the procedural bar, Petitioner would not be entitled to relief on this argument. First, Petitioner's claim about the jury's potential understanding of the statements could not provide relief because it is vague and speculative. He does not specifically explain how counsel was ineffective in this regard. *See Tejada*, 941 F.2d at 1559. Second, he would not be entitled to relief to the extent he argues that the state court's decision failed to consider whether the statements were properly obtained by police or admissible at trial. As noted, counsel argued that the statement was improperly obtained because Deputy Knecht's comment to the other officers was made to elicit a response from Petitioner, prior to reading him his *Miranda* rights. (Dkt. 6, Ex. A4, pp. 100-104.) In denying the motion, the state court found Petitioner's comment to be a spontaneous statement. (Id., p. 104.)

[19]As he did in Grounds Four and Seven(B), Petitioner again appears to raise a new substantive claim that the trial court erred when it ended the parties' conversations about plea offers on the morning of trial. For the same reasons addressed previously, this claim cannot be considered and does not provide a basis for federal habeas relief. *See supra*, note thirteen.

[20]Counsel also indicated that in reviewing discovery, he noticed two motions, but it appears he meant to refer to two police interviews in the discovery. (Dkt. 6, Ex. A4, p. 88.) He indicated that he had already successfully argued a different motion to suppress in front of another judge. (Id.) It appears that counsel initially intended to present two motions to suppress on the morning of trial, but that the State agreed it would not use the statements that were the subject of one of the motions. (Id., p. 91.) It further appears that the parties argued the second motion, concerning the statements of Deputy Knecht.

Petitioner asserted this claim within claim three of his Rule 3.850 motion.  (Dkt. 6, Ex. C1, p. 21.)[21]  However, Petitioner is not entitled to relief on this aspect of his claim.  Petitioner does not explain how filing the motion to suppress earlier would have affected the outcome of the motion, as counsel was able to fully present and argue the motion before the start of trial.  (Dkt. 6, Ex. A4, pp. 92-104.)  Petitioner has not demonstrated that the timing of the motion to suppress was relevant to the resolution of the claims presented in that motion and accordingly fails to show deficient performance of counsel in this regard.

Nor is Petitioner entitled to relief inasmuch as he argues that the timing of the motion to suppress interfered with his ability to accept the State's plea offer.  As addressed in more detail in Grounds Four and Seven (B) in the context of his claims that counsel was ineffective for failing to inform him that the plea was still available and failing to inform the court that he wanted to take the plea, Petitioner testified at the evidentiary hearing that he wanted the motion to suppress filed and resolved earlier because if he knew that his statements to Deputy Knecht would be admissible at trial, then he would have accepted the plea.

As further addressed in the discussion of those grounds, counsel's evidentiary hearing testimony indicated that the State's plea offer was available the Friday before trial but the parties

---

[21]The state postconviction court did not expressly identify this aspect of Petitioner's claim when it denied ground three of his Rule 3.850 motion.  (Dkt. 6, Ex. C2, p. 39.)  However, the court is presumed to have ruled on the merits of the constitutional claim presented to it.  *See Harrington,* 131 S.Ct. at 784–85.  Additionally, Petitioner also raised the claim on appeal of the denial of his Rule 3.850 motion, and the State's answer brief did not oppose this claim.  (Dkt. 6, Ex. D1, pp. 17-19; Ex. D2, p. 12.)  The state appellate court is presumed to have considered and rejected the claim when it issued its *per curiam* affirmance.  *See Wright*, 278 F.3d at 1254.  Finally, even assuming *de novo* review would be appropriate, Petitioner still would not be entitled to relief on this ineffective assistance of counsel claim for the reasons discussed in the portion of Ground Three addressing this ground.  *See Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003) (*De novo* review is warranted when a state court failed to address the merits of a claim presented in a habeas petition because "the present controversy falls outside of § 2254(d)(1)'s requirement that [the federal court] defer to state court decisions that are not contrary to, or an unreasonable application of, clearly established federal law.") (citation omitted).

were unable to come to an agreement, that Petitioner did not express a desire to accept the State's plea offer, and that Petitioner did not inform counsel that his decision whether or not to accept the plea would turn on the outcome of a motion to suppress.  Furthermore, Counsel testified in more detail about the circumstances of filing the motion to suppress in the context of the related claims that he was ineffective for failing to inform Petitioner of the availability of the plea and for failing to inform the court that Petitioner wanted to accept the plea.  Counsel recalled his belief that the statement "was falling under the excited utterance rule and it would not have a chance of bringing a Motion to Suppress and that would be frivolous.  It wasn't until the last moment that I discovered some law that I could hang my hat on."  (Dkt. 6, Ex. C4, p. 272.)  Counsel did not recall other specifics about the authority or how recent the authority was, and acknowledged the possibility that he may have been able to locate this authority earlier.  (Id., pp. 282-83.)  However, he testified that he worked on this issue before trial of his own accord, rather than because of any prompting by Petitioner.  (Id., pp. 285-86.)

It is apparent that this testimony about the filing of the motion to suppress was provided in the context of the claim raised in claim five of Petitioner's Rule 3.850 motion, which raised the issue now presented under Ground Four of his federal habeas petition.  The state court specifically found counsel's testimony as to the issues in claim five to be credible, and found Petitioner's testimony not to be credible.  (Dkt. 1, pp. 48-49.)  Therefore, the testimony that the court found to be credible reflected that counsel continued to work on the suppression issue and filed the motion when he found law to support his position and that, even assuming that counsel could have filed the motion earlier, Petitioner did not indicate to counsel that the outcome of the motion would have affected his decision to proceed to trial.  In addition to this evidentiary hearing testimony, the record reflects that

plea offers were not discussed on the record at the time the motion to suppress was heard and considered by the trial court.  (Dkt. 6, Ex. A4, pp. 87-105.)  Moreover, Petitioner does not assert in his habeas petition that he actually would have accepted the plea offer.  Instead, he argues only that he would have been better informed prior to deciding whether to plead.   Thus, Petitioner has not shown that counsel was ineffective in that his failure to file the motion to suppress earlier affected Petitioner's ability to accept the State's plea offer.

Petitioner has not demonstrated how counsel was ineffective.  Accordingly, Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of established federal law.  He is not entitled to relief on Ground Three.

Ground Five: "MR. POPE WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO USE STORE SURVEILLANCE VIDEO OF PERPETRATOR AT TRIAL."

Petitioner claims that counsel was ineffective for not entering a surveillance video from the robbery into evidence at trial.  He states that "[s]uch tapes may have provided exculpatory evidence if, in fact, they showed no weapon was used in the robbery."  (Dkt. 1, p. 27.)  Therefore, Petitioner argues, the video would have supported his theory that he "had no weapon at the time of the taking." (Id.)

Petitioner raised this argument in claim seven of his Rule 3.850 motion.  The state court conducted an evidentiary hearing on this claim and appears to have reviewed the video.  Petitioner testified at the evidentiary hearing that, based on the video, it was difficult to identify who went into the store and whether that person had a weapon.  (Dkt. 6, Ex. C4, p. 246.)  He further testified that he wanted the video to be played at trial.  (Id.)

Counsel testified that he expected the State to play the video.  (Id., p. 274.)  He testified that

he did not show the video in part because "a picture is worth a thousand words and you're actually

seeing the incident." (Id., p. 275.) He believed that seeing the robbery would have impacted the

jury and that "there is always a chance that a video will appear to a Jury in another light than the

way I explained it." (Id.) Counsel testified that it was "too risky" to play the video for the jury, and

that doing so "would have been malpractice." (Id., pp. 274, 278.) Counsel further acknowledged

that the video could have been helpful to show that the robbery was not forceful, but that he "chose

not to play it because it also presented identification of the perpetrator and it was a balancing act.

And also I had no way to put on the video without calling one of the State's witnesses." (Id., p.

284.)[22]

The state court denied this claim.  In its order, it summarized the evidentiary hearing

testimony and denied the claim upon finding that Petitioner failed to meet either prong of *Strickland*:

> The Court finds the Defendant has failed to establish either the first or second prong
> of *Strickland* regarding claim 7.  Although trial counsel conceded that it is possible
> that the introduction of the video may have had some limited value as applied to his
> defense, the Court finds that trial counsel's decision not to introduce the video was
> a strategic decision that was within the sound and reasonable exercise of professional
> judgment.  Additionally, even conceding some error by counsel for arguments sake,
> based on the evidence introduced at trial as set out in regard to claim 4, the Court
> finds that there is little likelihood that the result of trial would have been different.

(Dkt. 1, pp. 50-51.) Petitioner has not demonstrated entitlement to relief on Ground Five.  As to the

deficiency prong of *Strickland*, the record supports the state court's finding that counsel made a

strategic decision not to play the video.  Counsel's testimony reflects that after considering the risk

of the effect on the jury, combined with the possibility of a damaging identification and the fact that

---

[22]As to counsel's testimony that the video provided some identification of the perpetrator, counsel earlier
testified that, as he recalled, "the clothing was in the video ... it looked like somebody with a sweatshirt on." (Dkt. 6,
Ex. C4, p. 278.)  A sweatshirt was recovered during law enforcement's pursuit of Petitioner. (Dkt. 6, Ex. A4, p.
188.)  Additionally, Stephen Wilson described the suspect as wearing a sweatshirt. (Id., p. 162.)

he would have had to call a State witness in order to introduce the video into evidence, he determined that the potential downside of showing the video outweighed any possible benefit.

Moreover, counsel's strategic decisions are not easily overcome by alleging ineffective assistance of counsel.  When reviewing a claim of ineffective assistance of counsel, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Additionally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

The record further supports the state court's finding that Petitioner has not met the second prong of *Strickland*.  He cannot show a reasonable probability that the outcome of trial would have been different had the video been played, in light of the other evidence of identity presented at trial. He fails to demonstrate that the video likely offered evidence of identity that would have changed the outcome of trial, in light of the other evidence of identity presented.  The state court's order refers to its ruling on claim four of Petitioner's Rule 3.850 motion, in which it summarized the evidence of identity presented at trial:

> The Defendant was identified by several witnesses at trial as the perpetrator of the robbery.  He was witnessed running into an area where several articles of clothing worn by the perpetrator were found discarded along a path that led directly to the Defendant.  The Defendant was found wearing only boxer shorts and without his shoes.  Shoes were found along the route leading to the Defendant.

(Dkt. 1, p. 48.)[23]  This summary refers to portions of the trial testimony of Deputies Hearth and Wright.  The jury heard from them that Petitioner was tracked through a wooded area, where shoes and clothes were located, and that he was apprehended wearing his shorts and saying that he gave up.  Additionally, Smead, Wilson, and Deputy Wright made in-court identifications of Petitioner.  Given this information, Petitioner has not shown that the video would have contained evidence of the suspect's identity that likely would have changed the outcome of trial.  The record supports the state court's finding that, in light of this other evidence of identity, Petitioner fails to show that counsel's decision not to play the video of the robbery prejudiced him under *Strickland*.

Moreover, Petitioner fails to show prejudice as to whether the video would have shown whether the robber had a weapon because he presents his claim in a speculative and vague manner.  Petitioner does not assert that the video's contents in fact would have aided his defense; rather, he claims that the video might have been helpful if it actually showed that the perpetrator did not carry a weapon.  This speculation does not warrant federal habeas relief.  *See Tejada*, 941 F.2d at 1559.  Petitioner has not demonstrated that the state court's findings were contrary to or an unreasonable application of clearly established federal law, or were based upon an unreasonable determination of the facts in light of the evidence presented.  Consequently, he is not entitled to relief on Ground Five.

Ground Six: "MR. POPE WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO CROSS EXAMINE STATE WITNESS, OFFICER ROY KNECHT."

---

[23]The state court's order also indicated that it incorporated by reference "the State's summary of evidence presented at trial and argument with regard to the overwhelming evidence indicating the Defendant's guilt" as presented in the State's amended response to Petitioner's Rule 3.850 motion.  (Dkt. 1, p. 48.)  The State's amended response summarized substantially the same evidence discussed in this order, including the testimony of Deputies Hearth and Wright, and the in-court identifications made by Smead, Wilson, and Deputy Wright.  (Dkt. 6, Ex. C3, pp. 145-46, 148-49.)

Petitioner claims that counsel was ineffective for not cross-examining Deputy Knecht at trial.[24] Petitioner raised this argument in ground eight of his Rule 3.850 motion, where he asserted that what he actually told Deputy Knecht was that he did not have a gun as that would have been his life, and that cross-examination would have raised doubt as to whether the Deputy understood Petitioner's statements.[25]

The state court held an evidentiary hearing on this ground.[26] Petitioner testified at the evidentiary hearing that Deputy Knecht misunderstood his statement, and that what he said was that he did not have a gun because that would be his life.  (Dkt. 6, Ex. C4, pp.237, 249-50.)  He further indicated that, by this statement, he meant to communicate that he knew how significant having a

_____

[24] In his reply, Petitioner supports his claim of ineffective assistance of counsel by arguing that if counsel had cross-examined Deputy Knecht, the jury would have heard that Deputy Knecht's statement to the other officers that they needed to find a gun was meant to elicit a response from Petitioner, and also that Petitioner was in custody and had not been read his *Miranda* rights.  However, Petitioner did not raise these facts in support of his claim in his Rule 3.850 motion.  (Dkt. 6, Ex. C1.)  If a petitioner raises a claim of ineffective assistance of counsel in state court, but alleges different facts in support of the claim in his federal habeas petition, the federal claim has not been fairly presented to the state court.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.") (internal citations omitted).  Notwithstanding this bar, it is not apparent that Petitioner can show entitlement to relief on the basis of these supporting facts, as his remark to Deputy Knecht was admissible at trial as a spontaneous statement.  The court rejected counsel's argument during the motion to suppress hearing that the statements should be excluded on the basis that they were elicited by law enforcement or were made without the benefit of *Miranda* warnings.

[25] Petitioner does not raise these specific facts in support of his claim in his federal habeas petition.  To the extent that his overall claim that counsel was ineffective for failing to cross-examine Deputy Knecht has been exhausted in state court, however, it is considered here.

[26] Petitioner again asserts that counsel was ineffective for delaying the filing of his motion to suppress, "during which time a plea offer expired."  (Dkt. 1, p. 31.)  His claim that counsel was ineffective for waiting to file the motion to suppress, thereby affecting his ability to accept the State's plea offer, was considered and denied in Ground Three.  To the extent Petitioner appears to argue in support of this claim that counsel admitted the motion to suppress was untimely in accordance with an administrative order of the Tenth Judicial Circuit, such a claim was not fairly presented to the state court because Petitioner did not assert this in his Rule 3.850 motion, even though he went on to raise these facts in support of his claim on collateral appeal.  (Dkt. 6, Exs. C1, D1, D3.)  Therefore, he cannot raise these facts in support of his federal habeas petition.  *See Anderson*, 459 U.S. at 6 (1982).  Even assuming that Petitioner attempted to assert these facts on appeal in response to the state postconviction court's evidentiary hearing and resolution of his claim, he is not entitled to relief.  Even if counsel agreed the motion was untimely, as addressed in Ground Three, the motion was heard by the court prior to trial, and the credible evidentiary hearing testimony reflected that Petitioner did not want to plead, that his decision to go to trial or plead was not based on the outcome of a motion to suppress.  Accordingly, these assertions cannot provide relief for Petitioner.

gun would be and that he would not have risked his life by carrying a gun.  (Id., p. 250.)

Counsel testified at the evidentiary hearing that there was no reason to cross-examine Deputy Knecht simply for the sake of doing so, as he would not be able to obtain helpful testimony from Deputy Knecht.  (Id., p. 278.)  Counsel testified that he had no means to impeach Deputy Knecht as to the supposedly misinterpreted statement, and that he did not want to emphasize the Deputy's testimony by conducting cross-examination.  (Id., pp. 278-79.)  Counsel further testified that he did not want to address whether Petitioner actually said that he did not have a gun because that would be his life, as such a remark could indicate that Petitioner thought about the robbery ahead of time and understood the ramifications of carrying a gun.  (Id., p. 279.)  This would have run contrary to counsel's opening statements that the robbery was spontaneous.  (Id.)[27]

The state court denied this ground after the evidentiary hearing:

> The Court finds the Defendant has failed to establish either the first or second prong of *Strickland* regarding claim 8.  As with claim 7, the Court finds that trial counsel's decision not to cross-examine Officer Knecht was a strategic decision that was within the sound and reasonable exercise of professional judgment.  Additionally, even conceding some error by counsel for arguments sake, based on the evidence introduced at trial as set out in regard to claim 4, the Court finds that there is little likelihood that the result of trial would have been different had trial counsel cross-examined the officer as the Defendant suggests.

(Dkt. 1, p. 51.)  The record supports the state court's finding that counsel's decision not to impeach Deputy Knecht was a strategic one.  Counsel specified that he had no information with which to impeach Deputy Knecht, that he did not want to call any further attention to the Deputy's testimony, and that there was no value to conducting a cross-examination.  Furthermore, addressing Petitioner's allegedly misunderstood statement could have had the undesired effect of suggesting that Petitioner

---

[27]In opening statements, counsel asserted that Petitioner did not have the idea to ask for money while concealing his identity until he arrived at Love's Travel Stop.  (Dkt. 6, Ex. A4, p. 125.)

was aware of the consequences of carrying a gun during the offense, which would have stood out in contrast to counsel's opening statements asserting that the robbery was not planned ahead of time. For all of these reasons, as the state court found, counsel made a strategic choice not to cross-examine Deputy Knecht.  As previously addressed, counsel's strategic decisions are especially difficult to overcome through a claim of ineffective assistance of counsel.  Petitioner has not met this burden and has failed to demonstrate that counsel was ineffective for the reasons asserted here.[28]

Additionally, the state court determined that, given the evidence of guilt offered against Petitioner, there was not a reasonable likelihood that the outcome of trial would have been different. As discussed in Ground Five, the balance of the evidence of identity offered at trial supports the state court's finding.  Accordingly, Petitioner cannot demonstrate that the state court's ruling was contrary to or an unreasonable application of established federal law, or was based on an unreasonable determination of the facts.  Petitioner is not entitled to relief on Ground Six.

Ground Seven(A): "MR. POPE WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO MOVE FOR THE RECUSAL OF THE TRIAL JUDGE AFTER THE TRIAL JUDGE CUT OFF DIALOGUE REGARDING THE STATE'S PLEA OFFER ON THE DAY OF TRIAL."

Petitioner argues that the trial judge "abruptly put an end to the discussion of any plea offer on the day of trial, if any, and the trial attorney did not get a clear understanding of whether a plea

---

[28]To the extent Petitioner may attempt to raise a distinct claim in his reply that the trial court erred in denying the motion to suppress, he is not entitled to relief.  This claim is untimely for the same reason as other potential additional claims presented in his reply.  *See supra*, note four.  Additionally, even if the claim was timely, it is unexhausted because Petitioner failed to fairly present the claim in state appellate court.  While counsel raised this as a possible issue in the *Anders* brief, as noted, Petitioner declined to file a brief on appeal.  As Petitioner cannot return to state court to file a second direct appeal, the claim would be procedurally defaulted.  Petitioner does not argue or demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception would apply to allow review of the claim.  *See Smith*, 256 F.3d at 1138.  Accordingly, this argument warrants no relief.

offer was being made." (Dkt. 1, p. 36.)[29]  Petitioner argued in claim 12(a) of his Rule 3.850 motion

that counsel was ineffective for failing to "have [the] judge disqualified" for allegedly refusing to

hear the State's plea offer.  (Dkt.  6, Ex. C1, p. 32.)  This claim concerns the portion of the

proceedings prior to jury selection that was also discussed in Grounds Four and Seven(B).  *See*

*supra,* note eleven.

The state court's order summarily denied Petitioner's claim that counsel was ineffective in

failing to move for the judge's disqualification:

> By refusing to hear the State's recitation of the State's plea offer the trial judge was
> attempting to remain impartial if sentencing was required.  There was no reason for
> trial counsel to object to this comment be [sic] the trial judge.  The Court does not
> find that it showed any bias or prejudice toward the Defendant requiring
> disqualification of the trial judge.  Trial counsel cannot be found ineffective for
> failure to make a meritless claim.

(Dkt. 6, Ex. C2, p. 41) (court's reference to exhibit omitted).

The relevant portion of the transcript supports the state court's finding.  The record reflects

that the judge did not refuse to hear a plea offer, and his comments did not reflect any bias against

Petitioner.  The record indicates that, instead, the judge was attempting to remain neutral and keep

an open mind for any future sentencing decision.  The judge's comment was made in the context of

final preparations before trial, and in response to the prosecutor's statement that she wished to put

on the record what the State's offer was.  Counsel had no grounds to seek disqualification of the

---

[29]Although he has titled this claim as one of ineffective assistance of counsel for failing to move for recusal,
Petitioner states in the body of his claim that "[r]ecusal of the judge would not be the proper remedy.  An appeal
would be the proper remedy which is what Mr. Pope requested." (Dkt. 1, p. 36.)  Petitioner's claim that counsel
should have filed an appeal was not raised in his Rule 3.850 motion but was instead raised on postconviction appeal.
(Dkt. 6, Ex. C1; Ex. D1, pp. 27-28.)  Accordingly, the claim was not properly presented to the state postconviction
court and is unexhausted.  Moreover, Petitioner does not demonstrate entitlement to relief on this claim because he
does not clearly assert what counsel should have done in regard to an appeal, and an appeal was taken from the
judgment and sentence entered in this case.  To the extent that Petitioner has presented an exhausted claim that
counsel was ineffective for failing to file a motion for disqualification of the trial judge, his claim is considered.

judge.[30]   The record therefore supports the state court's finding, as counsel cannot be deemed ineffective for failing to file a meritless motion.  *See Brownlee,* 306 F.3d at 1066.  Furthermore, counsel's evidentiary hearing testimony, which the state court found credible, indicated that Petitioner did not express any desire to accept the State's plea offer, and that the parties had been unable to agree on a disposition of the case.  Accordingly, Petitioner is not entitled to relief because he has not shown the state court's ruling to be contrary to or an unreasonable application of clearly established federal law.  He is not entitled to relief on Ground Seven(A).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk is instructed to enter judgment against Petitioner and close this case.

It is further ordered that Petitioner is not entitled to a certificate of appealability.  A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529

---

[30]*See Foy v. State*, 818 So. 2d 704, 705-06 (Fla. 5th DCA 2002) ("A motion to disqualify a judge must establish a fear on the part of the movant that he or she will not receive a fair and impartial hearing.  The motion must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy ... The fear of judicial bias must be objectively reasonable ... [T]he facts and reasons given for the disqualification of a judge must tend to show personal bias or prejudice.") (citations and quotation marks omitted).

U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made this showing.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

  **DONE AND ORDERED** in Tampa, Florida, on January 30, 2015.

          Charlene Edwards Honeywell
          United States District Judge

Copy furnished to:
*Pro se* Petitioner
Counsel of Record